UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gentleman Marshall as AGENT obo His Granted Federal Franchise MARSHALL PFEIFFER Known as #222703407-g38455581,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GENERAL MOTORS/ CORPORATION SERVICE COMPANY; ALLY FINANCIAL INC/ CORPORATION SERVICE COMPANY; FEDERAL HOME LOAN MORTGAGE CORPORATION/AGENT; THE BANK OF NEW YORK MELLON CORPORATION/AGENT,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 18-CV-2551-GPC-JLB<br><br>**ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>[ECF No. 4.] |

　　　Before the Court is pro se Plaintiff Marshall Pfeiffer's ("Plaintiff's") emergency ex parte application for a temporary restraining order ("TRO") (ECF No. 4.) Having considered the Plaintiff's application, and the applicable law, the Court **DENIES** the application for a TRO.

//

# BACKGROUND

In 2008, Plaintiff executed a promissory note to Homecomings Financial LLC for a mortgage loan of $475,000, secured by a Deed of Trust on his property located at 4384 Mississippi Street, El Cajon, California. As a result of a series of complicated transfers involving the defendants referenced in the caption of this case ("defendants"), that loan came to be in the possession of defendant Qualified Loan Service Corporation ("Qualified Loan").

According to Plaintiff, Quality Loan filed a Notice of Default against his property on June 28, 2018. Thereafter, on October 8, 2018, Quality Loan filed a Notice of Trustee's Sale as to Plaintiff's property with the San Diego County Recorder. That Notice stated that Plaintiff was in default, and that a public auction as to his property would be held on November 9, 2018, at 9:00AM, to address Plaintiff's debts.

On November 7, 2018, Plaintiff filed a complaint in the instant case against defendants, alleging common law fraud, violations of the Fair Debt Collection Practices Act, and noncompliance with California Commercial Code. (ECF No. 1.) Plaintiff's complaint also sought declaratory and injunctive relief with regards to the impending foreclosure sale. Although it is not perfectly clear from Plaintiff's moving papers, it appears that he contends that defendants have improperly documented or notified him of the various transfers of his loan. As a result, Plaintiff claims he has no way to verify the legitimacy of the claimed note holder—i.e., Qualified Loan. He insists that because he was "under no[] obligation to pay anything to an unverifiable Party making an unverifiable Claim," the notice of default and resulting notice of sale are improper. (ECF No. 1-2, at 12.)

On November 9, 2018—i.e., the day of the scheduled foreclosure sale—Plaintiff presented the Court with the present ex parte application for a TRO. (ECF No. 4.) Plaintiff seeks to restrain Quality Loan and New Penn Financial d/b/a Shellpoint Mortgage Servicing LLC, another named defendant, from "engaging in any Sale, Auction or Foreclosure of Movant's Home known as 4382-4384 Mississippi Street." (*Id.* at 1). The

request fails under the analysis applicable to ex parte requests and also does not meet the requirements for a TRO. As such, the Court denies the application.

## ANALYSIS

**A. Ex Parte Applications**

To justify ex parte relief, a party must show two things: "First, the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures. Second, it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Plaintiff has alleged that, absent the TRO, he will suffer irreparable damage in the form of losing his home and becoming homeless as a result. (ECF No. 1, at 5; ECF No. 4, at 2.) The first factor is met.

The second looks to the "creation of the crisis," and asks whether "parties . . . have failed to present requests when they should have." *Id.* at 493 (quoting *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989)); *accord AF Holdings LLC v. Doe*, No. 12CV01525 LAB RBB, 2012 WL 5304998, at *3 (S.D. Cal. Oct. 24, 2012). Plaintiff cannot satisfy this second requirement.

Although the Court notes that Plaintiff proceeds pro se, Plaintiff is not without fault in creating the claimed emergency that led to his application for a TRO. Indeed, the claimed emergency did not arise as a result of his excusable neglect. As his complaint makes clear, Plaintiff was put on notice of a potential foreclosure action as early as June 28, 2018, when Quality Loan notified him of his default. That potential crystalized into an actual notice of sale on October 8, 2018, when Qualified Loan recorded the upcoming public auction. In light of this chronology, Plaintiff could have sought injunctive relief much earlier than when he did. There was a gap of approximately one month during which time Plaintiff might have petitioned the Court for appropriate action. Plaintiff provides no justification for failing to raise the issue at an earlier juncture and cannot
3

satisfy the second requirement for ex parte relief.

### B. Temporary Restraining Orders

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction and requires that the party seeking relief show either "(1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party." *Homeowners Against the Unfair Initiative v. Calif. Building Industry Assoc.*, 2006 WL 5003362, *2, 2006 U.S. Dist. LEXIS 97023, *4 (S.D.Cal. Jan. 26, 2006) (citing *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002)). The underlying purpose of a TRO is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Federal Rule of Civil Procedure 65(b) provides that a court may issue a TRO without notice to the adverse party in limited circumstances where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant . . . ." FED. R. CIV. P. 65(b)(1)(A). The movant must also certify in writing any efforts made to give notice of the TRO and the reasons why it should not be required. FED. R. CIV. P. 65(b)(1)(B). Although the restrictions imposed are stringent, they "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 438–39.

Here, the Court need not reach the merits of Plaintiff's request for a TRO because he has failed to satisfy the requirements of Rule 65(b)(1)(B). Plaintiff's application certifies that he mailed a copy of his emergency motion for a TRO to both New Penn Financial and Quality Loan. (ECF No. 4, at 4.) However, given that the notice of the TRO was mailed on the day as the Court was asked to act upon the request for the same, and in the absence of an indication of the delivery speed of the mailings, the Court finds that there

4

18-CV-2551-GPC-JLB

was no notice provided to the defendants, and no adequate justification for its absence. As explained previously, the alleged violations by New Penn Financial and Quality Loan were known to Plaintiff as early as June 28, 2018 and no later than October 8, 2018. The Court espies no explanation in Plaintiff's filings for this delay, nor any reason to excuse it.

Nor is Plaintiff's statement—that he had emailed the motion for a TRO to three email addresses—sufficient to demonstrate notice. (ECF No. 4, at 2.) One of the emails is addressed to "lossmitigation@shellpointmtg.com," which the Court surmises might correspond to someone at Shellpoint Mortgage Servicing/New Penn Financial. (*Id.*) The other emails listed are addressed to "info@mccarthyholthus.com" and "legalresolution@mccarthyholthus.com." (*Id.*) Plaintiff has not endeavored to explain who monitors these emails, how they are related to the TRO, and whether emailing the motion for TRO to those addresses would be reasonably calculated to reach the defendants at issue. Without this information, the Court is not prepared to rule that notice has been given.

The Court finds that the record does not support a finding that a TRO must issue immediately without notice and an opportunity to respond being afforded to the non-moving parties.[1]

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not made a clear showing that he is entitled to the extraordinary remedy of a TRO. *Winter*, 555 U.S. at 22. The Court therefore **DENIES** Plaintiff's application. (ECF No. 4.)

**IT IS SO ORDERED.**

Dated: November 13, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[1] Moreover, the Court queries whether the application to enjoin the auction is moot. The Notice of Trustee's Sale advised that the time of the public auction would be November 9, 2018, at 9:00AM. If the auction proceeded according to plan, then a TRO, submitted for the first time after the Opening Hours of the Court on that same day, would more than likely be moot.