UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Gentleman Marshall as AGENT obo His Granted Federal Franchise MARSHALL PFEIFFER Known as #222703407-g38455581,<br><br>Plaintiff,<br><br>v.<br>GENERAL MOTORS/ CORPORATION SERVICE COMPANY; ALLY FINANCIAL INC/ CORPORATION SERVICE COMPANY; FEDERAL HOME LOAN MORTGAGE CORPORATION/AGENT; THE BANK OF NEW YORK MELLON CORPORATION/AGENT; NEWREZ LLC F/K/A NEW PENN FINANCIAL, LLC, D/B/A/SHELLPOINT MORTGAGE SERVICING LLC; QUALITY LOAN SERVICE CORPORATION,<br><br>Defendants. | Case No.: 18-CV-2551-GPC-JLB<br><br>**ORDER GRANTING MOTIONS TO DISMISS [ECF Nos. 73, 74, 75, 87].** |

This litigation arises out of a loan obtained by pro se Plaintiff Marshall Pfeiffer ("Plaintiff"), secured by a Deed of Trust on his property, located in El Cajon, California.

At issue is Plaintiff's Second Amended Complaint ("SAC"), which alleges that entities associated with servicing, owning, and selling his mortgage loan have improperly and fraudulently moved to foreclose against him. (ECF No. 71.)

Various defendants in this case ("Defendants") have filed four motions to dismiss in response. On May 15, 2019, Magnum Property Investments, LLC, ("Magnum") filed a motion to dismiss. (ECF No. 73.) On May 17, 2019, Federal Home Loan Mortgage Corporation, NewRez LLC, New Residential Investment Corp., the Bank of New York Mellon Corporation filed a motion to dismiss. (ECF No. 74.) On May 20, 2019, Quality Loan Service Corporation ("Quality Loan") filed its motion to dismiss. (ECF No. 75.) On June 10, 2019, Ally Bank (erroneously sued as GMAC Bank/Ally Bank) filed a motion to dismiss. (ECF No. 87.) Plaintiff filed a combined response to these motions (ECF No. 81), and additionally filed a separate response to Ally Bank's motion (ECF No. 93).

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the foregoing motions suitable for adjudication without oral argument. For the reasons explained below, Defendants' motions to dismiss will be **granted** without leave to amend.

I. Background

    A. Factual History

On January 8, 2008, Plaintiff obtained a $475,000.00 Promissory Note (the "Note") from Homecomings Financial, LLC, secured by a Deed of Trust in Plaintiff's property at 4382-4384 Mississippi Street, El Cajon, California 92104. (ECF No. 87-3, at 5.)[1] The Deed of Trust was recorded on January 11, 2008 and listed Chicago Title as

---

[1] Pursuant to Federal Rule of Evidence 201, Defendants have moved the Court to take judicial notice of various documents related to Plaintiff's claims. The documents include the Deed of Trust executed by Plaintiff, several assignments of the Deed of Trust, two Substitution of Trustees under the Deed of Trust, a Notice of Default, and an Election to Sell Under Deed of Trust. All of these documents have been recorded in the Official Records of the San Diego County Recorder's Office. Plaintiff has also proffered documents, like the Notice of Trustee's sale, evidencing the initiation of foreclosure proceedings by Quality Loan.

Trustee and identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee beneficiary for the lender and lender's successors and assigns. (*Id.*)

After origination, the Deed of Trust was assigned five times, and the following assignments are reflected in the official records of the San Diego County Recorder's Office: (1) on March 8, 2011, MERS assigned the DOT to GMAC Mortgage, LLC (ECF No. 87-4); (2) on July 17, 2013, GMAC Mortgage, LLC assigned the DOT to Ocwen Loan Servicing (ECF No. 87-5); (3) on September 14, 2015, Ocwen assigned the DOT to Residential Credit Solutions Inc. (ECF No. 87-6); (4) on October 10, 2016, Residential Credit Solutions Inc. assigned the DOT to Ditech Financial LLC (ECF No. 87-7); (5) on November 13, 2017, Ditech Financial LLC assigned the DOT to NewRez (ECF No. 87-8). During this period, the identity of the Trustee also changed several times. On April 26, 2011, GMAC Mortgage, LLC substituted CAL-Western Reconveyance Corporation as Trustee. (ECF No. 74-5, at 2.) On February 2, 2016, the Law Offices of Les Zieve was substituted in as Trustee. (ECF No. 75-3, at 29.) Thereafter, on June 28, 2018, NewRez substituted in Quality Loan. (ECF No. 75-3, at 35.)

At some point in 2012, Plaintiff stopped paying his monthly payments under the Loan. (ECF No. 71-1, at 39 (referring to default in April 2012); ECF No. 71-2, at 18 (referring to default in August 2012).) Plaintiff's default persisted for approximately six years, until June 28, 2018, when Quality Loan, acting as Trustee for NewRez, recorded a Notice of Default and Election to Sell Under Deed of Trust. (ECF No. 75-3, at 38.)

---

The Court will grant the requests for judicial notice. Courts routinely take judicial notice of deeds of trust, notice of trustee's sales, substitutions of trustee, and other foreclosure-related documents. *See Fimbres v. Chapel Mort. Corp.*, No. 09-CV-0886-IEG (POR), 2009 WL 4163332, at *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee); *see also Gerard v. Wells Fargo Bank, N.A.*, No. CV1403935MMMSHX, 2014 WL 12599606, at *2 (C. D. Cal. Sept. 11, 2014) (taking judicial notice of grant deeds, a deed of trust, notice of trustee's sale). The Court's acknowledgment of these documents does not change the nature of the present proceedings, as courts are permitted to "consider certain materials—documents attached to the complaint, documents incorporate by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

Thereafter, on October 8, 2018, Quality Loan recorded a Notice of Trustee's Sale indicating that Plaintiff had been in arrears in the amount of $257,460.73. (ECF No. 75-3, 43.) The foreclosure sale took place on November 9, 2018, when Plaintiff's property was sold at auction to Magnum.

## B. Procedural Background

On November 7, 2018 Plaintiff filed his original complaint (ECF No. 1), and on December 5, 2018, Plaintiff filed a motion to amend the complaint to add additional defendants. (ECF No. 28.) On December 6, 2018, the Court denied the motion to amend as moot because Plaintiff could amend as of right under Federal Rule of Civil Procedure 15(a)(1)(A). (ECF No. 29.) In that motion, the Court specifically advised Plaintiff of his responsibility under Rule 8 to submit pleadings which were "simple, concise, and direct." (*Id.* at 4.) It further reminded Plaintiff that failure to comply with the Federal Rules, or any order of the Court may result in a dismissal of the action with prejudice. (*Id.* at 5.)

On December 17, 2018, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 29.) The FAC alleged, *inter alia*, that Defendants were engaged in a wrongful foreclosure on his property because there was a fraudulent chain of assignments of the DOT which demonstrated that NewRez was not the true beneficiary. Plaintiff also alleged that the Note had become separated from the Deed of Trust, and objected that any entity which sought to foreclose must show that it had physical possession of the note. Plaintiff further argued that Defendants improperly responded to his inquiries to ascertain the true noteholder.

On March 11, 2019, after considering the Defendants' motions to dismiss, the Court entered an order dismissing the FAC on three independent grounds. (ECF No. 65.) First, the Court agreed with Defendants that the FAC was so scattershot, inscrutable, and prolix that it ran afoul of Rule 8 with respect to many of the defendants. Second, the Court held that Plaintiff lacked standing to challenge the foreclosure sale because none of Plaintiff's assertions of impropriety—i.e., the separation of the Note from the Deed of Trust, the fact that some notes were endorsed in blank, and that some defendants did not

satisfactorily respond to his inquiries—would render the assignments void, rather than voidable. Finally, because the Court found that Plaintiff lacked standing to challenge the foreclosure sale, the Court found that Plaintiff's failure to tender the full amount of his outstanding debt precluded him from claiming wrongful foreclosure. In dismissing the FAC, the Court granted Plaintiff leave to file a second amended complaint, but cautioned Plaintiff that any such filing must address the deficiencies outlined in the dismissal order or risk dismissal. (*Id.* at 16.)

Plaintiff timely filed his SAC on May 30, 2019[2] (ECF No. 71); an apparently accompanying set of exhibits to the SAC—submitted under the title of "Amended Brief Appendix"—was uploaded to the docket on April 12, 2019 (ECF No. 67). The allegations in the SAC mirror the ones previously dismissed under the FAC, with two notable differences. First, in an ostensible effort to comply with Rule 8, Plaintiff included a section, titled "specific claims against each defendant," in which he groups his pleadings according to defendants. (ECF No. 71, at 10–28.) Second, Plaintiff clarified that his challenge to the foreclosure sale rested, in part, on a claim that NewRez had no beneficial interest in the Note because NewRez's beneficial interest stemmed, if at all, from a void assignment of the DOT from Homecomings Financial, LLC, the original lender, to GMAC Mortgage, LLC, back in 2011.

Defendants submitted motions to dismiss, arguing once more that Plaintiff's pleadings violate Rule 8, and that the SAC fails to overcome any of the deficiencies identified previously identified by the Court with respect to his failure to state a claim under Rule 12(b)(6).

## II. Applicable Legal Standards

### A. Rule 8

---

[2] The Court's March 11, 2019 dismissal order set a 30 day deadline for the filing of any SAC. The Court was made aware through the Clerk's Office that Plaintiff caused his SAC to be received on April 9, 2019. However, due to a docketing error, Plaintiff's SAC was not located and uploaded on that date. Plaintiff then filed his SAC anew, which was then uploaded to the docket on May 30, 2019. The Court finds good cause to find Plaintiff's SAC timely.

As the Court previously detailed in its December 6, 2018 Order, which granted Plaintiff leave to file a first amended complaint, (ECF No. 29), Plaintiff is beholden to the dictates of Rule 8. Rule 8(a)(2) requires that pleadings that state a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Complaints that are too confusing and prolix to "perform the essential functions of a complaint" are subject to dismissal under Rule 8. *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996) (upholding a Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (upholding a Rule 8(a) dismissal of a complaint that was confusing and conclusory). Although the pleadings of pro se plaintiffs are liberally construed, the basic pleading requirements of Rule 8 apply to self-represented and counseled plaintiffs alike. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995); *Wynder v. McMahon*, 360 F.3d 73, 79 n. 11 (2d Cir. 2004).

**B. Rule 12(b)(6)**

A Rule 12(b)(6) motion attacks the complaint as not containing sufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this respect, "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content,

must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

"Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." *Intri-Plex Techs., Inc. v. Crest Grp.*, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). However, "[a] court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment," as long as the facts noticed are not "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted); *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003).

## III. Plaintiff's Pleadings Comply with Rule 8

The Court previously dismissed Plaintiff's FAC on the grounds that his filing was so unclear, disjointed, and confusing, that it defied Rule 8's demand for a "short and plain statement of the claim." (ECF No. 71, at 8.) The Court also found that Plaintiff failed to distinguish between the defendants sued, made cursory allegations, and attempted to raise broad, wholesale claims of fraud against Defendants en masse. (*Id.* at 7–9.)

Plaintiff's SAC still gives the Court some pause at the Rule 8 threshold. At 118 pages (44 for the actual FAC, and 74 pages in accompanying exhibits), the allegations therein are still imprecise, repetitive, and disjointed.

However, Defendant took to heart the Court's admonition that pleadings must attempt to connect the alleged wrongful acts to the specific wrongdoer, so that each defendant is provided fair notice as to what they are to defend. To wit, Plaintiff has segregated out each individual Defendant and engaged in a targeted discussion of their alleged wrongful acts. (ECF No. 71, at 10–28.) Although those specified allegations are themselves somewhat meandering, they are sufficiently precise so as to give each defendant a fair picture of the claims against them. Indeed, despite Defendants' assertions under Rule 8, they have for the most part identified Plaintiff's primary contention—that of wrongful foreclosure—and articulated arguments against that claim on the merits. The Court will not grant dismissal pursuant to Rule 8.

## IV. Rule 12(b)(6)

### A. Wrongful Foreclosure under California Law

Under California law, wrongful foreclosure is a common law tort, taking the form of either "an equitable action to set aside a foreclosure sale, or an action for damages resulting for the sale, on the basis that the foreclosure was improper." *Sciarratta v. U.S. Bank National Assn.*, 247 Cal. App. 4th 552, 561–562 (2016). An action for wrongful foreclosure rests on three elements: "(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." *Sciarratta v. U.S. Bank National Assn.*, 247 Cal. App. 4th 552, 561–562 (2016) (internal quotation marks and citations omitted).

Debtors like Plaintiff face an additional hurdle—that of standing. As a third party to any assignments of the mortgage, the general presumption is that a debtor lacks standing to assert wrongful foreclosure. *See, e.g.*, *Yhundai v. IMPAC Funding Corp.*, 1 Cal. App. 5th 1252 (2016) (holding that borrower could not challenge foreclosure on the assignment of the deed of trust to the foreclosing party bore defects rendering it voidable because any such claim belonged to the parties to the assignment); *see also* 7 Cal. Jur. 3d (2012) Assignments § 43 ("Where an assignment is merely voidable at the election of the assignor, third parties, and *particularly the obligor*, cannot avoid the obligation or successfully challenge the validity or effectiveness of the transfer." (emphasis added)).

However, in *Yvanova v. New Cent. Mortgage Corp.*, 62 Cal. 4th 919, 923 (2016), the California Supreme Court clarified that a third-party debtor may nonetheless have standing if she alleges that an assignment is void, as opposed to merely voidable. In so holding, the court distinguished between void and merely voidable assignments. A challenge to a void assignment, the court reasoned, does not involve the debtor's

8

assertion of the rights of parties to the assignment, but rather rests upon the debtor's "assert[ion of] her own interest in limiting foreclosure on her property to those with legal authority to order a foreclosure sale." *Id.* at 937. Instead, debtor's standing is predicated upon the loss of ownership of her home due to an allegedly illegal trustee's sale that, but for the purported beneficiary's actions in ordering the sale based upon the allegedly void assignment, would not have occurred. *Id.*

The burden of alleging a void sale rests with the debtor. *Saterbak v. JP Morgan Chase Bank, N.A.*, 245 Cal. App. 4th 808, 814 (2016). "A sale is not rendered void merely because of minor or technical defects." *Ram v. OneWest Bank, FSB*, 234 Cal. App. 4th 1, 11 (2015). However, "a sale is rendered void . . . when the defects are substantial," such as when "the foreclosure sale is conducted by an entity that lacks authority to do so." *Id.* (citing *Dimock v. Emerald Properties*, 81 Cal. App. 4th 868, 878 (2000)).

### B. Plaintiff Lacks Standing to Plead Wrongful Foreclosure

Plaintiff articulates three reasons for why the assignments—cumulating in NewRez as the purported beneficiary—should be deemed void. First, Plaintiff argues that there has been a separation of the Note and the Deed of Trust. Second, Plaintiff argues that Defendants committed fraud by misleading him and refusing to disclose the legitimate Note holder when Plaintiff demanded they verify the true Noteholder. Third, Plaintiff contends that significant irregularities in the transfer of the Deed of Trust made the transfers and assignments of the Note ineffectual.

Defendants retort that Plaintiff's arguments for standing are merely duplicative of the contentions in his FAC. Thus, they must be rejected because Plaintiff has not alleged anything which would render the assignments void, as opposed to voidable.

After reviewing the applicable law, and the parties' briefing, the Court concludes that Plaintiff once again has failed to allege that he has standing to sue. Plaintiff's arguments are nearly identical to arguments previously raised in his FAC, and are unavailing for reasons discussed in the Court's March 11, 2019 order. The Court

9

18-CV-2551-GPC-JLB

addresses Plaintiff's theories in turn.

### 1. Separation of the Note from the Deed of Trust

Plaintiff's first argument for the invalidity of Defendants' assignments rests on his assertion that the Note and Deed of Trust are inseparable, and that Defendants must produce the actual Note in order to foreclose. For this proposition, Plaintiff leans on the common law rule recited by the Ninth Circuit in *In re Veal*, 450 B.R. 897, 916 (9th Cir. 2011) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." (quoting *Carpenter v. Longan*, 83 U.S. 271, 274–75 (1875)).

Courts have repeatedly rejected the contentions advanced by Plaintiff. As stated by the Court of Appeals in *Debrunner*, California's comprehensive non-judicial foreclosure statute, Cal. Civ. Code § 2924, "does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale," and accordingly, the separation of the note and deed of trust does not prevent a party from concluding a non-judicial foreclosure sale. *Debrunner v. Deutsche Bank Nat'l Trust Co.*, 204 Cal. App. 4th 433, 441 (2012) (quoting *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1098 (E.D. Cal. 2010)). Nor is there a rule prohibiting the separation of the Note from the Deed of Trust. On the contrary, both California courts and federal courts interpreting California law have concluded that nothing "precludes foreclosure when the foreclosing party does not possess the original promissory note." *Id.* at 440.

Because a "party need not possess [the] promissory note to foreclose," there is no reason to credit Plaintiff's assertion that the assignments are void for want of the Note. *Robertson v. Citibank, NA*, 713 F. App'x. 612, 613 (9th Cir. 2018) (unpublished) (citing *Debrunner*, 204 Cal. App. 4th at 440). Nor is there any legal basis for Plaintiff's contention that the alleged separation of the Note and the Deed of Trust poses a bar to foreclosure on the subject property.

### 2. Allegations of Fraud

Next, Plaintiff argues that the assignments are invalid because Defendants

committed fraud during the course of their interactions with Plaintiff.

Under California law, the necessary elements of fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1266, 1239 (2016); *accord Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *see also* CAL. CIV. CODE § 1572. The burden to establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), particularly because, in addition to pleading the elements of fraud, "'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b) requires that the facts constituting the fraud be pled with specificity. Conclusory allegations are insufficient. *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.").

The precise contours of Plaintiff's pleadings are somewhat hazy, but Plaintiff appears to allege two theories of fraud. First, Plaintiff argues that on February 23, 2011, MERS, the nominee beneficiary, fraudulently caused the Note to be assigned to GMAC Mortgage, LLC, when Homecomings Financial, the original lender, had previously sold its beneficiary interest to GMAC Bank on January 8, 2008. Second, Plaintiff appears to argue that his foreclosure occurred as a result of misleading and fraudulent letters issued by Defendants in response to his inquiries for Defendants to verify the true Note holder.

Plaintiff's fraud allegations with respect to MERS are not pleaded with the specificity demanded by Rule 9(b). Plaintiff's allegations are cursory in nature, advising MERS only that its sale of the Loan to GMAC Mortgage, LLC, in 2011 was done "fraudulently." (ECF No. 71, at 12.) Plaintiff does not provide specific allegations as to MERS's scienter, intent to defraud, or any resulting damage. These mandatory elements

are pleaded only at the grossest levels of generality. (*See id.* at 31–33). Plaintiff does not articulate any allegations of how MERS knew that its assignment was improper, nor does he plead the dates, circumstances, and occasions on which he either relied on representations made by MERS or made Loan payments to MERS (or the servicer at the time) which might be construed as damages. Plaintiff's allegations as to MERS do not pass muster under Rule 9(b).

Plaintiff's remaining fraud claims against the other Defendants, predicated on Defendants' alleged failure to disclose the Note holder at Plaintiff's written request, also fail. Fraud requires an allegation of "resulting damages." *Alliance Mortgage Co.*, 10 Cal. 4th at 1239. To the extent that Plaintiff asserts damages in terms of Loan payments made to parties not entitled to collect under the DOT, those allegations fail as to the other Defendants for the same reasons as they failed as to MERS. To the extent that Plaintiff asserts that he was damaged because Defendants' refusal to verify the Note holder somehow resulted in his coming into default, that notion fails as a matter of logic and chronology.

Plaintiff became in default of his loan obligations in 2012, but asserts injury arising out of Defendants' responses to Plaintiff's questions regarding his Loan. According to judicially-noticeable documents, the earliest of Plaintiff's inquiries was submitted on August 30, 2013. (*See* ECF No. 71-1, at 39 (referring to default in April 2012); ECF No. 71-2, at 18 (referring to default in August 2012).) Given that any fraudulent representations would have taken place *after* Plaintiff's default, the Court cannot see how any of the Defendants' alleged actions could have caused Plaintiff any damages. *See Banares*, 2014 WL 985532, at *7 ("Plaintiff alleges that she suffered damages as a result of Defendants' 'illegal and fraudulent foreclosure activities,' but does not allege how Wells Fargo's response to the questions regarding her Loan servicing would have helped her avoid foreclosure, especially since Plaintiff was already in default prior to ending the letter.").

### 3. Irregularities in the Transfer of the Note

Finally, Plaintiff asserts that NewRez, the entity that caused Quality Loan as Trustee to initiate non-judicial foreclosure, lacked the requisite beneficial interest in the Loan because of an earlier defect in the chain of title. Specifically, Plaintiff contends that the DOT was never legitimately assigned to GMAC Mortgage, LLC, rendering the ensuing chains in the assignment of title void.

Plaintiff's contentions rest on a January 8, 2008 letter printed on Homecomings Financial letterhead, advising him that his "mortgage loan has been purchased by GMAC Bank from Homecomings Financial, LLC." (ECF No. 71, at 7.) If Homecomings Financial relinquished its beneficial interest to GMAC Bank back in 2008, Plaintiff argues, it could not have possibly assigned its interest *again* on February 23, 2011, when MERS, as the nominee designated by Homecoming Financial, purported to execute an assignment of the DOT to GMAC Mortgage, LLC. According to Plaintiff, MERS's assignment to GMAC Mortgage, LLC was void, and all subsequent assignments, including to NewRez, are defective as a result.

Plaintiff's argument, however, is unavailing given the explicit language of the Deed of Trust. The Deed of Trust identifies Homecomings Financial as the "Lender" and names MERS "as [t]he beneficiary of this Security Instrument . . . (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (ECF No. 85-3, at 4.)[3] It also provides that the borrower, i.e., Plaintiff, "understands and agrees that MERS holds only legal title to the interests granted by the Borrower in this Security Instrument,"—i.e., the DOT—and that "MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any of those interests." (*Id.*) According to the DOT, then, MERS has the right to assign the beneficiary interest in the DOT on behalf of not only Homecomings Financial, but also any of Homecoming

---

[3] Typically, the owner of a promissory note is the beneficiary of the associated deed of trust. *Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1003 (2016). "Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." *Id.*

13

Financial's successors and assigns. So, even if the Court were to construe the January 8, 2008 letter as evidencing an actual assignment by Homecomings Financial to GMAC Bank, MERS, would nonetheless have had the authority to assign away any interest vested in GMAC Bank, since GMAC Bank would have been an assignee of Homecomings Financial. *See, e.g.*, *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125 (2011) (holding that the nominee had the right to initiate foreclosure on behalf of an assignee of the original lender based on similar contract language); *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1157 n. 9 (2011) (same).

Accordingly, MERS was authorized to assign the DOT in 2011. That being the case, Defendants have contradicted Plaintiff's claim of voidness by a series of judicially-noticeable documents demonstrating that there are no defects in the chain of title beginning with MERS and ending with NewRez. *See Gamboa v. Tr. Corps*, No. 09-0007 SC, 2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009) (rejecting borrower's assertion that a beneficiary was not the holder of a properly-endorsed note because record documents demonstrated an unbroken chain of assignments of the Deed of Trust concluding with the foreclosing party). The recorded assignments at hand—from MERS to GMAC Mortgage, LLC, from GMAC Mortgage, LLC to Ocwen Loan Servicing, LLC, from Ocwen to Residential Credit Solutions, Inc. to Ditech Financial LLC, from Ditech to NewRez—defeat Plaintiff's allegations that NewRez lacked authority to foreclose. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts entertaining motions to dismiss need not accept as true allegations that "contradict matters properly subject to judicial notice").

### 4. Conclusion as to Standing

"A third party to an assignment lacks standing to challenge its effectiveness unless the assignment is void, as opposed to voidable." *Banares,* 2014 WL 985532, at *3. All three of Plaintiff's theories for voidness fail, once more, as a matter of law. Plaintiff therefore lacks standing to assert a wrongful foreclosure claim.

### C. Failure to Tender

Even if the Court were to assume that Plaintiff has standing, his failure to tender the amount of his indebtedness would doom his case.

As Defendants point out, a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal. App. 4th 1101, 1109 (1996). "The tender rule requires a plaintiff to (1) 'demonstrate a willingness to pay' and (2) 'show the ability to pay.'" *Farah v. Wells Fargo Home Mortgage*, No. 5:13-cv-01127-PSG, 2014 WL 261562, at *2 (Jan. 23, 2014 (quoting *In re Worcester*, 811 F.2d 1224, 1231 (9th Cir. 1987)). "The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs." *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1022 (1989).

Plaintiff has not made any offer to tender the amount still owing on his loan. His failure to tender the amount of his indebtedness is yet another reason why his claims cannot prevail.

**V. Conclusion**

To conclude, although Plaintiff clears the Rule 8 threshold, his SAC fails because he lacks standing to mount a wrongful foreclosure claim, and because he has failed to tender the amount of the debt. As such, Defendants' motions to dismiss under Rule 12(b)(6) are **GRANTED with prejudice.[4]** The motion hearing set for July 12, 2019 is hereby **VACATED**.

The Clerk is directed to enter judgment against Plaintiff.

---

[4] Leave to amend need not be given if a complaint as amended is subject to dismissal. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny or grant leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *See Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Failure to cure deficiencies by previous amendments is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538. The Court previously identified in its March 11, 2019 Order deficiencies which Plaintiff has failed to cure in the instant pleading. The Court finds that any further amendments would be futile. As such, the dismissal is without leave to amend.

**IT IS SO ORDERED.**

Dated: June 26, 2019

Hon. Gonzalo P. Curiel
United States District Judge